## KNAPP, Respondent, v. HANLEY, Appellant.

### St. Louis Court of Appeals, May 14, 1907.

**BROKERS: Commissions: Instructions.** In an action by one broker against another for one-half of a joint commission earned in the sale of certain stock, where the defendant had entered a secret agreement with the principal as to the compensation, which inured to the benefit of the plaintiff, the instructions are set out at length and held to be confusing and misleading in stating abstract propositions of law so that the trial court was justified in sustaining a motion for new trial on behalf of plaintiff.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. M. Kinsey*, Judge.

AFFIRMED.

*Jones, Jones & Hocker* and *H. Chouteau Dyer* for appellant.

(1)    All of the instructions given by the court tender plaintiff's theory of the case to the jury.    These instructions are to be considered in their entirety and not as though each separate instruction was intended to embody the whole law of the case, and if taken as a whole they fairly state the law applicable to the case; this is sufficient.    McKeon v. Railway, 43 Mo. 405; O'Connell v. Railway, 106 Mo. 482; Meade v. Railway, 68 Mo. App. 92; Voegeli v. Marble & Granite Co., 56 Mo. App. 678; Minter v. Bradstreet Co., 174 Mo. 495; State v. Sharp, 183 Mo. 738.    (2)    Instruction number one of plaintiff's refused instructions was properly refused as the substance was fully covered by the instructions given for plaintiff,    particularly    by    instruction    number    two given for plaintiff and it is not error to refuse to give one or more instructions when those given cover the issues of the case.    Coe v. Griggs, 76 Mo. 619; Connolly v. St. Joseph P. P. Co., 166 Mo. 447; Klockenbrinck v. Railway, 81 Mo. App. 351.    (3)    This instruction also assumes that the defendant received the full compensation to be paid to plaintiff and defendant which was an issue in the case.    Furthermore this instruction is open to the criticism that it endeavors to inject into the case an issue of fraud.    No such issue is raised by the pleadings and it could not therefore be raised at this time or in this manner.    De Donato v. Morrison, 160 Mo. 581.    This instruction is also bad and should not have been given, for the reason that it presents purely an abstract proposition of law.    Poepper v. Hotel Co., 142 Mo. 387; Bradley v. Railway, 138 Mo. 293.

*Vernon W. Knapp* and *John A. Harrison* for respondent.

The instructions given for defendant were confusing, misleading, and contradictory, and were therefore

erroneous. This is particularly true of instruction number two. Legg v. Johnson, 23 Mo. App. 593; Stevenson v. Hancock, 72 Mo. 614; State v. Clavenger, 25 Mo. App. 653; Spillane Case, 111 Mo. 555; State v. Herrell, 97 Mo. 105; McQuillin on Inst., sec. 156.

BLAND, P. J.—In April, 1902, as representative of competing railroad companies for the control of the Wiggins Ferry Company, the Mercantile Trust Company and the Mississippi Valley Trust Company of St. Louis sent the stock of the Wiggins Ferry Company skyward, Charles Mullikin, a resident of the State of Virginia, owned one hundred and seven shares of the Wiggins Ferry Stock. For this stock he was wired an offer by the president of the Wiggins Ferry Company. On April 27, the plaintiff, who is his maternal uncle and at the time was his St. Louis business agent, wired him not to accept any offer for his stock but to take the first train for St. Louis. Mullikin arrived in St. Louis about noon, April 29. Hanley was acquainted with Mrs. Whittemore, a resident of St. Louis, mother of Mullikin and sister of Knapp. Hanley had done some business for Mrs. Whittemore and learning from her that a sale of some of her stock in the Wiggins Ferry Company had been negotiated by her brother to the Mississippi Valley Trust Company and that her other shares would probably be sold to said company, and also that her son Mullikin was on his way to St. Louis for the purpose of selling his stock, Hanley conceived the idea of offering the stocks of both for sale in one block, for the purpose of getting a better price, and having been informed by Mrs. Whittemore that plaintiff was Mullikin's agent, on April 28, procured an introduction to the plaintiff with whom he was not theretofore acquainted, and informed him that he "had means of obtaining inside figures about what the stock was doing," and asked plaintiff's per-

mission to aid him in the sale of Mullikin's stock.  Plaintiff consented to this and the two agreed to meet Mullikin the day following, on his arrival in St. Louis.  Mullikin did arrive at noon on the following day, and was met at the Union Station by his mother and plaintiff.  The three drove in a carriage from the station to defendant's office, where the sale of the stock was discussed.  From Hanley's office, the party re-entered the carriage and started to an office at No. 417 Pine street.  Hanley alighting en route to visit the Mercantile Trust Company for the purpose of getting a bid on Mullikin's stock, but was unsuccessful, and rejoined plaintiff and Mullikin at at the Pine street office.  In the meantime, Mullikin had procured his stock from a safety deposit box.  Hanley informed Knapp and Mullikin of the refusal of the Mercantile Trust Company to make a bid on the stock, and advised as speedy a sale as possible, and it was decided to visit the Mississippi Valley Trust Company at once for the purpose of selling the stock to that company.  Before leaving the Pine street office, Knapp stepped out of the office for a pen to be used by Mullikin to indorse his certificate of stock.  In his absence, Hanley asked Mullikin what was the highest price he wanted for his stock.  Mullikin answered, all he could get, and in reply to a further question of Hanley, said he wanted $800 per share.  Hanley said: "Will you divide all above that amount and ask no questions?"  Mullikin responded, "Yes."  Knapp returned with the pen, the certificates of stock were indorsed by Mullikin and handed over to Hanley, and he and Knapp immediately repaired to the office of the Mississippi Valley Trust Company where both, in the presence of each other and in the presence of the officers of the company, represented that they were the agents of Mullikin for the sale of the stock and Hanley proceeded to negotiate for the sale of the stock to the company, and succeeded in selling it at $900 per share; the company also agreeing that it would indemnify

Mullikin against loss or damage he might incur by not selling the stock to the President of the Wiggins Ferry Company. Checks for $96,300, the purchase price of the stock, were made out and delivered, which were deposited by Mullikin to his individual credit in the Union Trust Company. Immediately after making the deposit, he gave his check against such deposit to Hanley for $5,350, being the amount at fifty dollars per share on the one hundred and seven shares of stock, and the amount which he agreed to pay in his private agreement with Hanley, and the only agreement made by and between the parties for compensation to Hanley and Knapp, or both, for effecting the sale of the stock. Knapp was ignorant of the agreement between Hanley and Mullikin until after the entire transaction was closed and the $5,350 was paid over to Hanley. Upon learning of the transaction, Knapp called Hanley up over the telephone and they had a telephonic conversation about the matter. They disagree as to what this conversation was. Knapp testified he claimed one-half of the $5,350, and that Hanley acknowledged the claim to be just and agreed to pay it. Hanley denies that he acknowledged the claim or promised to pay it. The action is to recover one-half of the $5,350 paid to Hanley by Mullikin under the circumstances related.

On a former trial of the cause, plaintiff was nonsuited and appealed to this court, where we held the plaintiff made out a prima-facie case, and reversed and remanded the cause. [104 Mo. App. 353.] After the case was remanded, plaintiff amended his petition, wherein he alleged in substance that Mullikin agreed with plaintiff and defendant, in consideration of services rendered and to be rendered in and about the sale of his one hundred and seven shares of stock, to pay them for the services one-half of whatever he should receive on the sale of such stock over and above $800 per share; that plaintiff and defendant, as agents of Mullikin, sold the stock

for $900 per share, aggregating $96,300, and that their commission of the sale, as per agreement, was $5,350, which Mullikin paid to Hanley on April 29, 1902, one-half of which was to be turned over to plaintiff immediately; that plaintiff demanded one-half of the same ($2,675) on April 29, and that Hanley then and there agreed to turn such sum over to plaintiff, but has ever since neglected and failed to do so. The verdict was for defendant, but on motion by plaintiff, was set aside and a new trial granted. From the order granting a new trial, the defendant appealed. The motion for new trial was sustained on the grounds that the court erred both by giving erroneous instructions for defendant and refusing proper instructions asked for by the plaintiff.

For the plaintiff, the court gave the following instructions:

"1.   The court instructs the jury that in determining whether or not Charles Mullikin employed plaintiff and defendant jointly to attend to the sale of the stock mentioned in evidence, the jury will consider all the facts and circumstances in evidence in the case as to whether the parties so intended at the time, that is to say, whether they by word or act gave each other so to understand, and if from all the facts and circumstances in the case the jury find and believe from the evidence that Mullikin, Knapp and Hanley, did give each other by word or act to so understand, and the plaintiff and defendant so attended to said sale and rendered such service to Mullikin concerning the same, and that defendant received the whole compensation therefor from said Mullikin, and has not paid to plaintiff any part thereof, then the jury will find for plaintiff.

"2.   The jury are instructed that if they find and believe from the evidence that plaintiff and defendant undertook to perform the services mentioned in the petition for Charles Mullikin under joint employment from him, and acting together, performed the services, and that

then said Mullikin paid over to defendant a sum of money in full compensation for such services, then, in the absence of any understanding to the contrary between plaintiff and defendant (as to which the jury must determine under all the evidence in the case) the plaintiff was entitled to receive from defendant one-half the sum so received by defendant from Mullikin.

"3. The court instructs the jury that in order to establish the agreement 'that plaintiff and defendant agreed to perform said services and to divide equally between themselves all such compensation as said Mullikin should pay therefor,' it is not necessary that plaintiff should prove in the trial that such agreement was in words actually expressed between plaintiff and defendant, but it is sufficient for the jury to find and believe from all the facts and circumstances in the case, that the parties acted and conducted themselves towards one another in the carrying out of the matter in such way as to lead each other to believe that they so intended at the time."

And for the defendant, the following:

"1. The court instructs the jury that in order for the plaintiff to recover, he must establish by the preponderance or greater weight of the testimony that the person referred to in the testimony as Mullikin, employed the plaintiff and defendant to act jointly as his agents in and about the sale of certain stock owned by him and mentioned in the testimony and to pay them one-half of all realized over and above $800 per share for said stock and that it was understood and agreed between plaintiff and defendant prior to the sale of said stock that they should divide said one-half of such excess between themselves and unless he has done so, plaintiff cannot recover and your verdict must be for the defendant.

"2. The court further instructs you that if you find and believe from the evidence that there was no agreement express or implied as defined in other instructions

given you whereby the defendant agreed to divide with the plaintiff any amount he, the defendant, might receive from Mullikin, on account of the sale of Mullikin's stock entered into between or arising by implication of law as heretofore defined, between the defendant and the plaintiff before the sale of said stock was consummated, then the court further instructs you that any promise or agreement, you may find and believe to have been made by the defendant with the plaintiff after the consummation of the sale of said stock for the payment of any sum of money by the defendant to the plaintiff for and on account of the sale of said stock is not binding on the defendant and your verdict must be for the defendant.

"3.    The court instructs the jury that before the plaintiff can recover in this action you must find and believe from the preponderance or greater weight of the evidence that in the sale of the stock referred to in the testimony the defendant and plaintiff acted in conjunction and that the defendant received a sum of money from one Mullikin, mentioned in the testimony and that it was understood between defendant and said Mullikin that said sum of money was paid defendant as compensation for the services of both plaintiff and defendant in and about such sale at the time Mullikin paid defendant, if you so find, and unless you so find, the plaintiff cannot recover and your verdict must be for the defendant."

Plaintiff asked six other instructions which the court refused; one on the measure of plaintiff's damages which should have been given. The substance of the other five are comprehended in the fourth one, which reads as follows:

"If the jury find and believe from evidence that at the request or by the authority of Charles Mullikin plaintiff and defendant rendered services for Mullikin in and about the sale of the stock mentioned in the petition; and that it was understood between them at the time that the compensation to be paid by Charles Mullikin there-

for, if any, should be paid to the plaintiff and defendant jointly, that is, to both of them and not that he should settle with or compensate them each separately; and that defendant received from said Mullikin the whole of said compensation and has paid no part thereof to plaintiff, then the jury will find for plaintiff; and as to whether or not there was such an understanding between the parties, is for the jury to say under all the facts and circumstances in evidence in the case.

"If plaintiff and defendant rendered such services and if there was such an understanding at the time, then the court instructs the jury that the same constitutes the agreement alleged in the petition. Concerning such alleged agreement the court instructs you that it is not necessary if it was made, that it should have been made in writing, or in express words, but the jury may infer the same from all the facts and circumstances of the case, which is for the jury to consider.

"If the jury find and believe from the evidence that such services were rendered by plaintiff and defendant and that the same was so rendered with the understanding or agreement aforesaid (if there was such understanding or agreement) and that the whole compensation therefor was paid by Mullikin to said defendant for himself and plaintiff and was so received then the court instructs the jury that in the absence of any understanding to the contrary, the jury will presume that it was the intention of the parties at the time, that said compensation was to be equally divided between plaintiff and defendant."

This instruction might be somewhat confusing to the ordinary jury. It aimed to and does, in a way, submit to the jury to find the essential facts relied upon by plaintiff for a recovery, which are; first, that plaintiff and defendant were jointly employed by Mullikin as agents to sell his stock; second, that the secret agreement made by Hanley and Mullikin for compensation, inured

to the benefit of plaintiff as he, after learning of the agreement, assented thereto; third, that the joint employment of plaintiff and defendant, entitled each to one-half of the compensation, although the contract for such compensation was made by Mullikin with Hanley alone and without the knowledge of the plaintiff. And we think the instruction should have been given, but suggest that on a retrial of the cause, it, as well as other instructions, be so amended as to omit mere abstract propositions of law and declare the law upon the facts hypothetically stated.

Defendant's instructions are open to the same criticism. In the abstract, they are perhaps correct, but as they read, they are misleading and in the absence of proper instructions for plaintiff, to which they are supposed to refer, cut the plaintiff's case up by the roots. We do not think it is at all probable that the jury, from the instructions given, got anything like a clear conception of the law of the case. In fact, the case is a difficult one to instruct, so that an ordinary jury may comprehend it. But the instructions given as well as those refused, which should have been given, can undoubtedly be improved and made more intelligible to a jury. We think no error was committed by the court in sustaining the motion for new trial, and affirm the judgment. *Goode,* and *Nortoni, JJ.,* concur.